SECOND DIVISION

May 27, 2003

 No. 1-01-4028

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

EFRAIN MORALES,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from

the Circuit Court

of Cook County

No. 94 CR 29937

Honorable

Evelyn B. Clay,

Judge Presiding.

JUSTICE CAHILL delivered the opinion of the court:

Defendant Efrain Morales appeals from an order of the circuit court summarily dismissing his 
pro
 
se
 second postconviction petition.  Following a jury trial in 1996, defendant was convicted of the first degree murder of Billy Bradford and the attempted first degree murders and aggravated batteries of Charles Crawford (also known as Charles Vega) and Jose Nevarro (also spelled Navarro).  Defendant was sentenced to 60 years' imprisonment for first degree murder and a consecutive 30-year term for attempted murder.  We affirm.

Defendant's convictions arose from events involving members and former members of the Milwaukee Kings and Satan's Disciples street gangs on the night of October 24, 1994.  The victims were in front of Bradford's house, 710 North Willard Court in Chicago, when a group of men, including two later identified as defendant and Mario Gonzales (also spelled Gonzalez), approached and fired guns.  The victims were wounded, Bradford fatally.  The gunmen fled.  The police arrived at the scene and spoke with the surviving victims.  The victims did not tell the police the identities of the gunmen who, according to the victims, were wearing black "hoodies" (hooded sweatshirts).  The victims were then taken to the hospital.  That night, codefendant Michele Jacques in a statement to the police implicated herself and defendant.  One day after the shootings, Nevarro identified defendant in a photo array by signing his name on the back of defendant's photograph.  Gonzales confessed that same day.  In a plea agreement, Gonzales pleaded guilty and implicated defendant.  Nevarro again named defendant as one of the gunmen before a grand jury on November 10, 1994.  Nevarro said he had known defendant for nine years, having grown up in the same neighborhood.  The victim Crawford relocated to another state after being released from the hospital, but shortly before trial, he returned to Chicago and identified defendant from the same photo array shown to Nevarro.  Jacques made a statement to a private detective in August 1995, claiming that her earlier identification of defendant as one of the gunmen was untrue. 

At his trial in 1996, defendant was represented by private counsel.  Katrina Scimone, a witness for the State, testified that defendant asked her to lie to the police by saying she and her father, Thomas Scimone, were with defendant at the time of the shooting.  

On direct appeal, defendant was represented by a different private attorney who raised two claims: (1) a jury instruction error and (2) ineffective assistance of trial counsel.  We rejected those claims, finding, 
inter
 
alia
, that defendant was not prejudiced by the alleged errors and the evidence in the case, strengthened by the unimpeached testimony of two eyewitnesses (the victims) and physical evidence, was not closely balanced.  
People v. Morales
, No. 1--96--2582 (1997) (unpublished order under Supreme Court Rule 23). 

In March 1998, defendant filed his first petition under the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122-1 
et
 
seq
. (West 1998)).  He was represented by the same attorney who represented him on direct appeal.  Defendant again claimed ineffective assistance of trial counsel, citing different reasons from those raised on direct appeal.  The trial court allowed defense counsel to make an oral statement supporting defendant's petition, but dismissed the petition as lacking merit under section 122-2.1(a)(2) of the Act (725 ILCS 5/122-2.1(a) (2) (West 1998)) (if the trial court determines the petition is frivolous or patently without merit, the court shall dismiss it in a written order specifying its findings of fact and conclusions of law). 

The same attorney continued to represent defendant on appeal of the dismissal of the first postconviction petition.  Defendant alleged: (1) the trial court did not issue a proper written order; (2) ineffective assistance of trial counsel; and (3) new evidence that Katrina had lied at trial.  Attached to the appeal was Katrina's affidavit, dated May 19, 1998.  In it, Katrina equivocated, stating that, although she testified at trial that she was not with defendant on the night of the shooting, she now could not recall if she was with him or not.  Defendant also attached the affidavit of Thomas Scimone dated May 31, 1998, stating that he and defendant were together,"cooking up" cocaine, when the victims were shot.  We affirmed the trial court's summary dismissal of the first petition in 
People v. Morales
, No. 1--98--2749 (1999) (unpublished order under Supreme Court Rule 23).  

Gonzales signed an affidavit on December 1, 1998, while incarcerated, asserting that defendant was not the second gunman.  Gonzales claimed he was not interviewed by defendant's attorneys or an investigator as to the identity of the second gunman.    

Defendant filed this 
pro
 
se
 second postconviction petition in March 2001, claiming that the trial court's consideration of his first petition was fundamentally flawed.  He contended that the trial court erred in allowing defense counsel to present an oral argument because the Act precludes input from either the State or the defense during the first stage of postconviction review under, 
e.g.
, 
 People v. Oury
, 259 Ill. App. 3d 663, 668, 631 N.E.2d 822 (1994), and  
People v. Gaultney
, 174 Ill. 2d  410, 418,  675 N.E.2d 102 (1996).  Defendant also alleged 11 violations of his constitutional rights: (1) his first postconviction petition stated meritorious claims and was wrongfully dismissed; (2) he suffered ineffective assistance of appellate counsel on his first postconviction petition and his appeal of its denial; (3) prosecutors withheld evidence favorable to his defense; (4) his consecutive sentences were unconstitutional under 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000); (5) his sentences were unfairly disparate from those of his codefendant; (6) the State presented perjured testimony by the codefendants, victims, Katrina and the medical examiner; (7) newly discovered evidence revealed in his attached affidavits proved his innocence; (8) the photo array in which he was identified was impermissibly suggestive; (9) ineffective assistance of trial counsel; (10) ineffective assistance of appellate counsel on direct appeal; and (11) the evidence did not support his convictions. 

Defendant attached the affidavits of Desiré Aponte, dated April 5, 1999, stating that she had been told by Roberto Moncada that Moncada, not defendant, was the second gunman; Melvin Boyd, dated May 5, 1999, stating that in November 1994, Nevarro admitted to Boyd that he falsely identified defendant as the second gunman; Alberto Guerra and Oswaldo Arroyo, dated March 31, 1999, and August 8, 2000, respectively, stating Nevarro admitted that, although he could not see the gunmen's faces, he falsely identified defendant as a gunman; and Juan Carrasquillo, dated June 21, 1999, stating that to his knowledge, defendant did not commit the crimes of which he was convicted.  Boyd, Guerra, Arroyo and defendant were all incarcerated at Menard Correctional Center when the affidavits were prepared.  Carrasquillo was incarcerated in another institution.      

The trial court summarily dismissed the second petition as "frivolous and patently without merit" in a written order on May 25, 2001 (
People v. Morales
, 94--CR--29937 (Cir. Ct. Cook Co.)).  The trial court found that defendant's objection to defense counsel's oral argument was an improper postconviction claim because it was not constitutional in nature and did not occur at trial.  Even if it was error to allow the argument, the trial court concluded that defendant suffered no harm and, more than likely, was helped by the court's action.  The trial court concluded that the claims failed as either barred by the principles of 
res
 
judicata
 or waiver (claims 3, 5, 6, 8, 9, 10, and 11), insufficient to state a claim (claims 1 and 7), or not cognizable on postconviction review (claims 2 and 4).  To be cognizable, a claim must show a substantial denial of  rights under the state or federal constitution.  725 ILCS 5/122-1(a) (West 1998). 

The trial court determined that defendant's claims of ineffective assistance of postconviction counsel and improper consecutive sentencing under 
Apprendi
 did not rise to the level of a substantial deprivation of his constitutional rights.  See 
People v. Flores
, 153 Ill. 2d 264, 276, 606 N.E.2d 1078 (1992) (the right to postconviction counsel is statutory, not constitutional);  
People v. Carney
, 196 Ill. 2d 518, 531, 752 N.E.2d 1137 (2001) (consecutive sentences within the statutory maximum for separate offenses do not violate 
Apprendi
 and are not unconstitutional).  The trial court also concluded that defendant's affidavit evidence did not meet the standard articulated in 
People v. Washington
, 171 Ill. 2d 475, 489, 665 N.E.2d 1330 (1996) (new evidence must be so conclusive as to have probably changed the result on retrial).  The trial court characterized the affidavits as "contradictory," "insufficient to exonerate defendant" and containing "inadmissible hearsay." 

The trial court also found defendant's second petition untimely under section 122-1(c) of the Act.  "No proceedings under this Article shall be commenced more than 6 months after the denial of a petition for leave to appeal or the date for filing such a petition if none is filed *** (or more than 45 days after the deadline for the filing of the defendant's brief with the Illinois Supreme Court if no brief is filed) or 3 years from the date of conviction, whichever is sooner." 725 ILCS 5/122-1(c)(West 1998).  The trial court calculated that defendant's second postconviction petition should have been filed by May 26, 1998, but it was not filed until March 23, 2001.   After  the trial court summarily dismissed the second petition as frivolous and patently without merit, defendant filed, and the trial court denied, a motion to reconsider. 

On appeal, defendant has abandoned 9 of his 11 claims and challenges the summary dismissal on just 2 grounds: (1) he stated the gist of meritorious constitutional claim of ineffective assistance of appellate counsel; and (2) his attached affidavits were newly discovered evidence of actual innocence that probably would have changed the outcome on retrial. 

The Act allows a criminal defendant to collaterally attack an earlier judgment by claiming a substantial violation of his state or federal constitutional rights.  
People v. Johnson
, 191 Ill. 2d 257, 268, 730 N.E.2d 1107 (2000); 725 ILCS 5/122-1(a) (West 1998).  The Act "contemplates the filing of only one post-conviction petition."  
Flores
, 153 Ill. 2d at 273.  Successive petitions may be allowed if proceedings on the first petition were fundamentally deficient.  
Flores
, 153 Ill. 2d at 273-74.  The restrictions on successive petitions are designed to prevent a defendant from attempting "to develop the evidentiary basis for a claim in a piecemeal fashion in successive post-conviction petitions."  
People v. Erickson
, 183 Ill. 2d 213, 226-27, 700 N.E.2d 1027 (1998).   The rules may be relaxed where fundamental fairness so requires to prevent a miscarriage of justice.   
People v. Pitsonbarger
, No. 89368, slip op. at 10 (May 23, 2002).  Defendant has framed his two claims to conform to existing exceptions to the ban on successive petitions.    

Defendant's first claim, ineffective assistance of appellate counsel, may be raised in a successive petition where, as here, the defendant was represented by the same attorney on direct appeal and in his first postconviction proceeding.   
Erickson
, 183 Ill. 2d at 223.   However, a defendant states a constitutional claim only by pleading ineffective assistance of appellate counsel on direct appeal, and not by pleading ineffective assistance of counsel in postconviction proceedings.  
Flores
, 153 Ill. 2d at 276 (the sixth amendment right to counsel does not apply in postconviction proceedings).  Defendant's second claim, actual innocence based on newly discovered evidence, may also be allowed in a successive petition.  To demonstrate a miscarriage of justice severe enough to allow a successive petition, a petitioner must show actual innocence.  
Pitsonbarger
, slip op. at 10.  So defendant's claims are not barred by the general ban on successive petitions.

The standard of review of a trial court's summary dismissal of a postconviction petition is plenary.  
People v. Coleman
, 183 Ill. 2d 366, 388-89, 701 N.E.2d 1063 (1998) (the reviewing court has the same capacity as the circuit court to look at allegations and construe them liberally in petitioner’s favor).  We note that the trial court considered the procedural factors of untimeliness, 
res
 
judicata
 and waiver in its order of dismissal.  
Morales
, 94--CR--29937 (Cir. Ct. Cook. Co.).  These three factors are insufficient to justify a first-stage dismissal of a postconviction petition.  See 
People v. Boclair
, 202 Ill. 2d 89, 100-01 (2002) (the trial court can only determine whether a petition is "frivolous or is patently without merit" and may not dismiss a petition based on untimeliness); 
People v. Blair
, No. 1--01--1453, slip op. at 5 (March 21, 2003) (the analysis in 
Boclair
 is equally applicable to dismissals on the grounds of 
res
 
judicata
 and waiver; summary dismissals on those grounds cannot be affirmed on appeal, citing 
People v. McGhee
, No. 1-01-0766 (March 19, 2003)).  Although the trial court here found that the petition was untimely and some claims were barred by 
res
 
judicata
 or waiver, its first-stage dismissal was properly based on its substantive finding that the claims were frivolous or patently without merit under section 122-2.1(a)(2) of the Act (725 ILCS 5/122-2.1(a) (2) (West 1998)). 

Defendant first asserts that he suffered ineffective assistance of appellate counsel because counsel did not raise these meritorious claims on direct appeal: (1) the disparity in the sentences of defendant and his more culpable codefendant is unfair; (2) trial counsel was ineffective for failing to suppress an overly suggestive photo identification; and (3) trial counsel was ineffective for failing to investigate, interview and present material witnesses.

 The constitutional guarantee of assistance of counsel applies both at trial and on defendant's first appeal as of right.  
People v. Haynes
, 192 Ill. 2d 437, 472, 737 N.E.2d 169 (2000).  The test for ineffective assistance of appellate counsel is the two-part standard established in 
Strickland v. Washington
, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984).  
Haynes
, 192 Ill. 2d at 472
.   A defendant must show that appellate counsel's failure to raise the contested issue was objectively unreasonable, and the defendant was prejudiced as a result.  
Haynes
, 192 Ill. 2d at 476.  Prejudice exists when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.   In the absence of prejudice, a reviewing court need not consider whether counsel's performance was deficient.  
Haynes
, 192 Ill. 2d at 473.  Appellate counsel need not raise every possible issue on review or raise issues lacking merit, unless counsel's appraisal of the merits is "patently wrong."  
Haynes
, 192 Ill. 2d at 476.  To successfully claim ineffective assistance of counsel, a defendant "must overcome a strong presumption that the challenged actions of counsel were the product of sound trial strategy."  
People v. Metcalfe
, 202 Ill. 2d 544, 561, 782 N.E.2d 263 (2002).  Judicial scrutiny of counsel's performance is highly deferential and presumes that reasonable professional assistance was rendered.  
Erickson
, 183 Ill. 2d at 224.

Defendant claims that appellate counsel was ineffective for failing to raise the issue of disparate sentencing.  Gonzales was sentenced to 44 years' imprisonment (14 years less than defendant), even though, as defendant claims, Gonzales was “more culpable.”  Defendant argues that the disparity was arbitrary and unreasonable, relying on 
People v. Caballero
, 179 Ill. 2d 205, 216, 688 N.E.2d 658 (1997).   However, the sentence imposed on a codefendant who entered a guilty plea under a plea agreement cannot be compared to a sentence imposed after a trial.  
People v. Brown
, 267 Ill. App. 3d 482, 487, 641 N.E.2d 948 (1994).  “When a defendant pleads guilty, accepts responsibility for his actions, and ensures the prompt application of justice, it is not error for the trial court to exercise leniency.”  
People v. Tripp
, 306 Ill. App. 3d 941, 954, 715 N.E.2d 689 (1999).  Because Gonzales pleaded guilty and defendant did not, the sentencing disparity does not prove that defendant's sentence was excessive. 

Even more persuasive is the State's assertion that defendant's sentencing claim is not reviewable.  Defendant has not included a record of the criteria considered by the trial court in sentencing defendant or Gonzales.  A defendant who claims that his sentence is inappropriately disparate from a codefendant's bears the burden of producing a record sufficient to make a rational comparison.   
People v. Ralon
,  211 Ill. App. 3d 927, 957,  570 N.E.2d 742 (1991).  Factors to be considered in examining disparate sentences include differences in a codefendant’s "history, character, criminal records, potential for rehabilitation or relative maturity."  
Brown
, 267 Ill. App. 3d at 487.  Defendant contends only generally that his greater sentence violates "fundamental fairness."  In the absence of a more complete record, we cannot say that the disparity is, 
per
 
se
, proof that defendant's sentence is excessive or that appellate counsel should have raised the matter as ineffective assistance of trial counsel. 

Alternatively, defendant asks this court to reduce his sentence to 44 years, equal to  Gonzales' sentence.  Supreme Court Rule 615(b)(4) permits a reviewing court to reduce the punishment imposed by the trial court. 134 Ill. 2d. R. 615(b)(4)).  We decline.  The sentencing of a defendant rests within the sound discretion of the trial court and, if the term imposed is within the statutory limits, it will not be reversed absent an abuse of discretion.  
People v. Nutall
, 312 Ill. App. 3d 620, 635, 728 N.E.2d 597 (2000).   Defendant's sentences are within the statutory range for first degree murder, 20 to 60 years' imprisonment (730 ILCS 5/5-8-1(a)(1)(a) (West 1998)), and for attempted murder, a Class X term of 6 to 30 years (730 ILCS 5/5-8-1(a)(3) (West 1998)).  We will not disturb the sentence imposed by the trial court.  

Defendant also claims ineffective assistance because appellate counsel did not argue that trial counsel was ineffective for failing to "vigorously protest" and suppress the "impermissibly suggestive out-of-court photo identification" by Crawford.  The identification was improper, defendant alleges, because Crawford was left alone in a room at the police station with an array containing the same photograph of defendant signed on the back by Nevarro.  The State points out that, according to transcripts attached to defendant's petition, trial counsel did, in fact, raise a motion to suppress Crawford’s photo identification.  The State responded with an offer of proof by calling, 
instanter
, the police officer who conducted the identification.  The officer would testify that he was instructed to "make sure [the police] didn't show [Crawford] the writing on the back of the photograph."  Counsel withdrew the motion, concluding that it would fail.

 To establish prejudice in the context of counsel's failure to file a motion to suppress, a defendant must show a reasonable probability that the motion would have been granted and the outcome of the trial would have been different had the evidence been suppressed.  
People v. Lundy
,  334 Ill. App. 3d 819, 830, 779 N.E.2d 404 (2002).  Trial counsel's failure to file a motion to suppress evidence does not establish incompetent representation when the motion would be futile.  
Lundy
, 334 Ill. App. 3d at 830.  

Here, trial counsel ascertained that his motion to suppress would be futile if the police officer who conducted the identification testified.  Defendant has not overcome the presumption that counsel’s decision to withdraw the motion was a matter of sound trial strategy.  Nor has he  shown a reasonable probability that, if the motion had been granted, the outcome would have changed.  Even if Crawford's identification of defendant's photograph had been suppressed, the unimpeached eyewitness testimony of the victim Nevarro, who had known and lived in the neighborhood with defendant for nine years, would have supported defendant's conviction.  "The testimony of a single, credible witness can be sufficient to support a conviction if the witness observed the accused under conditions permitting a positive identification."  
People v. Houston
, 151 Ill. App. 3d 102, 110, 502 N.E.2d 1111 (1986).   It cannot be said that but for trial counsel's alleged error in withdrawing the motion to suppress, defendant would have been acquitted.

Defendant next contends that appellate counsel was ineffective for failing to interview Katrina and Thomas Scimone about defendant's alibi and Gonzales about the identity of the second gunman.  In an ineffectiveness case, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  
Strickland
, 466 U.S. at 691, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066.  "Where circumstances known to counsel at the time of his investigation do not reveal a sound basis for further inquiry in a particular area, it is not ineffective for the attorney to forgo additional investigation."  
People v. Pecoraro
, 175 Ill. 2d 294, 324, 677 N.E.2d 875 (1997). 

Here, it was not unreasonable for appellate counsel to forgo pleading that trial counsel was ineffective for failure to interview the Scimones and Gonzales.  Trial counsel had no reason to believe in 1996 that Katrina would equivocate in 1998 or Gonzales would change his statement in 1998.  As to Thomas, defendant has not shown prejudice.  There is no ground for believing that, had trial counsel interviewed Thomas and presented his testimony about "cooking up" cocaine with defendant on the night of the shootings, defendant would have been acquitted because of a credible alibi.  See 
Houston
, 151 Ill. App. 3d at 110 (a trier of fact is not required to believe alibi testimony that contradicts a positive identification of the defendant).

Defendant next argues that he stated a viable freestanding claim of actual innocence based on newly discovered evidence revealed in the affidavits of Gonzales, Aponte, Boyd, Guerra, Arroyo and Carrasquillo.  These affidavits, defendant claims, were sufficient to warrant a new trial.  Defendant relies on 
Morelli v. Ward
, 315 Ill. App. 3d 492, 734 N.E.2d 87 (2000), to assert that a defendant should not be penalized for failing to seek out a witness when it was unknown when the defendant knew or could have known that the witness was willing to recant.  
Morelli
, 315 Ill. App. 3d at 499.   The complaining witness, defendant's former girlfriend, said she initially lied because she was angry, but later changed her mind and recanted.  In that case, the trial court erred in not remanding the cause based on the defendant's new evidence of a recantation. 

The surviving victims here did not change their statements implicating defendant.  The recantation was made by a codefendant whose motivation for changing his statement is suspect, at best.  See, 
e.g.
, 
People v. Askew
, 273 Ill. App. 3d 798, 801, 652 N.E.2d 1041 (1995) (on the use of threats by other prisoners to obtain "jail house" affidavits).

 The State argues that defendant has not met the evidentiary threshold to warrant a hearing on his freestanding claim of actual innocence under 
Washington
, 171 Ill. 2d at 489 (a defendant is entitled to relief on his claim of actual innocence only where the evidence is so conclusive that it would probably change the result on retrial).  Courts may consider a freestanding claim of actual innocence in a postconviction proceeding if there is "new, material, noncumulative" evidence.  
Washington
, 171 Ill. 2d at 489.  Newly discovered evidence is evidence that was unavailable at trial and could not have been discovered sooner through due diligence.  
People v. Burrows
, 172 Ill. 2d 169, 180, 665 N.E.2d 1319 (1996).  As a general rule, hearsay affidavits are insufficient.  
People v. Cole
, 215 Ill. App. 3d 585, 588, 575 N.E.2d 10 (1991).

The trial court found the affidavits to be inadequate.  Our review of the documents convinces us that the Aponte, Boyd, Guerra and Arroyo affidavits contain inadmissible hearsay; the Gonzales and Carrasquillo affidavits are simply unpersuasive.  As the State points out in a footnote in its appellate brief, the purported signatures of Gonzales appearing on his statement and on his affidavit are, even to the untrained eye, dissimilar.  That mystery aside, none of the affidavits contains new, material evidence.  The affiants, all but one of whom was incarcerated at the time his affidavit was made, were not credible and their statements are not sufficiently conclusive to support defendant's claim of actual innocence.

The judgment of the circuit court is affirmed.

Affirmed.

BURKE and GARCIA, JJ., concur.