THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ARMANDO MANRIQUE, Defendant-Appellant.

Third District    No. 3—02—0309

Opinion filed July 23, 2004.

278

Carrie B. Marche and Mark D. Fisher, both of State Appellate Defender's Office, of Ottawa, for appellant.

Terence M. Patton, State's Attorney, of Cambridge (Lawrence M. Bauer and Judith Z. Kelly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McDADE delivered the opinion of the court:

In this case from the circuit court of Henry County, the defendant appeals from the dismissal of a petition for postconviction relief. The petition, which raised a claim of actual innocence, was summarily dismissed by the trial court as successive, untimely, and barred by *res judicata*. The defendant appeals and argues that it was improper for the trial court to dismiss the petition in the first stage of the postconviction review process. For the following reasons, we reverse.

## FACTS

The defendant, Armando Manrique, was a passenger in a motor home traveling on Interstate 80 on November 6, 1995. Also in the motor home were the driver, Andres Elken Montoya, and passengers Guillermo Carvajal, Miguel Londono, Iriada Sanchez and Niurca Torres. The vehicle was pulled over for speeding by the Illinois State Police. After issuing a written warning, the officer asked Montoya for permission to search the home, which was granted. During the

subsequent search, the police found several black plastic storage bags containing bricks of cocaine. The cocaine was hidden in storage cabinets and under several bunk beds. The officers stated that it was impossible to determine what was in the bags without opening them and that they did not smell like cocaine.

Manrique denied any knowledge of the cocaine and stated that he had encountered his friend Montoya in Los Angeles and that Montoya had invited him on a road trip in the motor home.

Manrique was convicted in the circuit court of Henry County of controlled substance trafficking (720 ILCS 570/401.1 (West 2002)), unlawful possession with intent to deliver a controlled substance (720 ILCS 520/401(a)(2)(D) (West 2002)), and possession of a controlled substance (720 ILCS 570/402(a)(2)(D) (West 2002)), and was sentenced to 56 years in prison.

On direct appeal, the defendant argued that it was error for the trial court to deny his pretrial motion seeking the suppression of the cocaine. *People v. Manrique*, No. 3—96—0744 (August 21, 1997) (unpublished order under Supreme Court Rule 23). The appeal was denied and the defendant's conviction was affirmed.

The defendant, in 1998, filed a *pro se* petition for postconviction relief in which he alleged ineffective assistance of counsel because of his attorney's failure to call Montoya as a witness at the suppression hearing and at trial to testify that the defendant did not know about the cocaine. The State filed a written response to the petition which contained an affidavit from the defendant's original attorney. The affidavit stated that defense counsel had attempted to call Montoya as a witness, but that Montoya's lawyer would not allow her client to testify and that he would have pled his fifth amendment right against self-incrimination if called as a witness.

At an evidentiary hearing on the petition, on January 18, 2001, the trial court found that the defendant did not receive ineffective assistance of counsel for failure to call Montoya, because Montoya was not available as a witness. The court denied the defendant relief.

On February 15, 2002, the defendant filed a second postconviction petition alleging a claim of actual innocence. The petition contained affidavits from both the defendant and Montoya stating that Montoya was willing to testify that the defendant had no knowledge of the cocaine. The dismissal of that petition resulted in this appeal.

## ANALYSIS

The key question is whether the trial court may summarily dismiss a successive, untimely postconviction motion that raises issues that have been previously litigated. The parties have each cited a case in

support of their position, *People v. Morales*, 339 Ill. App. 3d 554, 791 N.E.2d 1122 (2003), and *People v. Smith*, 341 Ill. App. 3d 530, 794 N.E.2d 367 (2003).

In *Morales*, the court stated in *dicta* that it would be improper for the court to summarily dismiss a successive postconviction petition on the basis of untimeliness or *res judicata*. *Morales*, 339 Ill. App. 3d at 560-61, 791 N.E.2d at 1128. However, the court found that the trial judge had properly dismissed the petition for being patently without merit. *Morales*, 339 Ill. App. 3d at 561, 791 N.E.2d at 1128-29.

In *Smith*, the court found that the trial court properly dismissed a petition in the first stage of the process when the petition was successive and raised issues that could have been raised in the first petition. In so deciding, the court applied the "cause and prejudice" test of *People v. Britt-el*, 206 Ill. 2d 331, 794 N.E.2d 204 (2002), which requires the defendant to show that an objective factor, external to the defense, impeded the defendant's ability to raise the claim in the first petition and that the claimed error "so infected the entire trial that the resulting conviction violates due process." *Britt-el*, 206 Ill. 2d at 339, 794 N.E.2d at 209.

While we agree with *Smith* that the "cause and prejudice" test is appropriate in determining whether a successive petition will be allowed when there has been a procedural error in prior proceedings on the case, we do not believe that the test is appropriate here. In this case, the defendant has not alleged error below but, rather, raises an independent claim of actual innocence.

In cases where the "cause and prejudice" test does not apply, the court will allow a successive petition when the denial of the petition would result in a fundamental miscarriage of justice. *People v. Pitsonbarger*, 205 Ill. 2d 444, 459, 793 N.E.2d 609, 621 (2002). The defendant may show a miscarriage by alleging a claim of actual innocence. *Pitsonbarger*, 205 Ill. 2d at 459, 793 N.E.2d at 621. To show actual innocence, the defendant must " ' "show with a fair probability that, in light of all the evidence, including that *** available only after the trial, the trier of facts would have entertained a reasonable doubt of [the defendant's] guilt." ' [Citation.]" *Sawyer v. Whitley*, 505 U.S. 333, 339 n.5, 120 L. Ed. 2d 269, 280 n.5, 112 S. Ct. 2514, 2519 n.5 (1992).

In this case, the defendant has alleged actual innocence. The potentially exculpatory testimony of Andres Elken Montoya was not previously available to the defendant. Montoya was not called as a witness at the defendant's trial. According to the defendant's original trial counsel, this was because Montoya's attorney maintained that Montoya would exercise his fifth amendment right if called as a wit-

ness. At that time and at the time of the first petition, Montoya's testimony was unavailable to the defendant. Now, however, Montoya has stated that he would testify to the defendant's lack of knowledge of the cocaine. The defendant had no control over Montoya's willingness to testify. Even the trial court, ruling on the defendant's initial postconviction petition, found that the testimony was not available. Only when Montoya changed his position was the defendant able to use the evidence to raise a claim of actual innocence.

The State argues that the evidence does not establish the defendant's actual innocence and that its use would not have changed the outcome of the trial. The assertion is clearly specious. The evidence against the defendant was circumstantial and rested on the inference that the defendant must have known about the bales of cocaine hidden in the mobile home. The testimony from the driver of the van that the defendant was not told about the cocaine would seriously undercut the State's case. The jury easily could have concluded that, absent being told that the cocaine was there, the defendant would not have known about it, especially in light of the fact that the cocaine was not observable by sight or smell but rather wrapped in black plastic and hidden. In any event, the State's objection is premature, since all the defendant must do at this point is allege the gist of a claim. *People v. Gaultney*, 174 Ill. 2d 410, 418, 675 N.E.2d 102, 106 (1996).

The absence of Montoya's testimony calls into question the accuracy of the defendant's conviction. Given the circumstantial nature of the State's case, the omission of the testimony is sufficiently prejudicial to violate due process and raise concerns about a miscarriage of justice.

## CONCLUSION

Clearly, Montoya's evidence is potentially exculpatory. It supports a claim of actual innocence that may be brought in a postconviction proceeding. The defendant has presented the gist of a claim of actual innocence that implicates a fundamental miscarriage of justice. For these reasons, the ruling of the Henry County circuit court is reversed and the case remanded for further proceedings consistent with this opinion.

Reversed and remanded.

SLATER, J., concurs.

JUSTICE SCHMIDT, dissenting:
I dissent. The testimony at trial established that defendant's

shoulder bag was sitting on and concealing one of the bags of cocaine. There was approximately 900 pounds of cocaine in the motor home. Defendant testified that he did not know about the cocaine in the motor home. In his first postconviction petition, defendant alleged ineffective assistance of counsel because of his attorney's failure to call Montoya as a witness. After an evidentiary hearing, the trial court found that defendant did not receive ineffective assistance of counsel for failure to call Montoya.

In his second postconviction petition, defendant raises the same issue, that of Montoya's testimony, only couched as a claim of actual innocence.

A successive postconviction petition may be dismissed at the first stage of review on the basis of waiver or res judicata. People v. Britt-El, 206 Ill. 2d 331, 794 N.E.2d 204 (2002); People v. Smith, 341 Ill. App. 3d 530, 794 N.E.2d 367 (2003).

I believe that the issues raised in defendant's successive postconviction petition are the same issues he raised in the initial postconviction petition, simply couched in a different manner. Therefore, the claim is barred by res judicata. Even if it is not the identical issue, it is certainly an issue that could have been raised in the initial postconviction petition, and therefore, the successive petition is barred by waiver. Even the initial postconviction petition is not intended to provide the defendant with a retrial of issues that could have been raised during a previous proceeding. People v. Kitchen, 189 Ill. 2d 424, 727 N.E.2d 189 (1999). Certainly, a successive petition should not be used to relitigate those issues.

Moreover, the proposed evidence does not establish defendant's actual innocence. Defendant claims that Montoya would testify that defendant had no knowledge of the cocaine. Montoya would not be able to give such testimony, only that he did not tell the defendant about the cocaine, since a lay witness may not express an opinion or draw inferences from the facts. See People v. Crump, 319 Ill. App. 3d 538, 745 N.E.2d 692 (2001).

Even if Montoya testifies that he did not tell defendant about the cocaine, this is a far cry from proving that defendant did not know about the cocaine. There were four other passengers in the van in addition to Montoya and defendant. Montoya previously reported to police that only he and two other passengers had knowledge of the drugs. Even if the jury believed Montoya's testimony that he did not tell the defendant about the drugs, this would not rule out one of the other passengers telling defendant about the drugs. Montoya could not testify regarding any conversations between defendant and the other passengers.

Some factual background is also worth mentioning in determining whether this proposed testimony is likely to change the result of the trial. Defendant lived in Miami but often worked in New Jersey as a carpenter and asbestos remover. In mid-October 1995, defendant took a trip with Montoya, Miguel Londono (one of the other passengers in the motor home at the time of the arrest) and Londono's wife in the motor home. They allegedly dropped defendant off at defendant's temporary residence in New Jersey and then continued to drive west. The motor home broke down in Pennsylvania and defendant drove from New Jersey to Pennsylvania to arrange for the vehicle to be repaired. Subsequently, defendant bought a one-way ticket and traveled from New Jersey to Los Angeles. On November 3, defendant testified that he, by coincidence, ran into Montoya in a parking lot of a motel. Montoya invited defendant to join him and the others on a trip to Chicago or Niagra Falls with stops in Las Vegas, Salt Lake City and Aspen. Defendant accepted the invitation, although those stops never materialized. The motor home was stopped and defendant and the other passengers were arrested on Interstate 80 in Henry County, Illinois, on November 6, 1995.

Examining defendant's own testimony, we have him meeting up with Montoya and others in Miami less than one month before his arrest and accepting a ride from Miami to New Jersey in the motor home. Montoya and the others left defendant in New Jersey, but when the motor home broke down in Pennsylvania, Montoya called defendant to drive to Pennsylvania to assist in making arrangements for the repair of the motor home. Defendant did so. Defendant returned to New Jersey while Montoya and the motor home headed west. Around the first of November, defendant decided to take a vacation to Los Angeles (without his wife and children) and bought a one-way ticket to Los Angeles, went to a motel where he just happened, by coincidence, to run into Montoya and the motor home, which is now, unknown to defendant, loaded with $62 million worth of cocaine. Having nothing else to do, defendant accepted Montoya's invitation to drive back east with various planned stops at Las Vegas, Salt Lake City and Aspen. It was unclear whether the final destination for the motor home was Chicago or Niagra Falls. During the trip from Los Angeles to Illinois, the heater in the rear of the motor home did not work so defendant never went to the rear of the motor home.

Obviously, the jury did not buy this story the first time. I believe we have to suspend all credulity to believe that there is any chance the result will be different if Montoya takes the stand and testifies that he did not tell defendant about the presence of the 900 pounds of cocaine in the motor home.

284

The majority, labeling this argument as specious, ignores how defendant happened to be in the motor home. He was not a hitchhiker. The evidence is overwhelming that he flew from New Jersey to Los Angeles to meet with Montoya.

In conclusion, I believe that the proposed testimony of Montoya was neither new, noncumulative, nor likely to produce a different result upon retrial. Certainly, the defendant's successive postconviction petition did not state the gist of a constitutional claim. To deny this successive petition would not result in a fundamental miscarriage of justice. See *People v. Pitsonbarger*, 205 Ill. 2d 444, 793 N.E.2d 609 (2002). I would affirm the trial court's order dismissing defendant's successive postconviction petition.