2022 IL App (1st) 200795-U
No. 1-20-0795
Order filed December 30, 2022

First Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) ) | |
| v. | ) ) | No. 09 CR 17820 |
| IBRAHIM KIBAYASI, | ) ) ) | The Honorable Marc W. Martin, Judge, presiding. |
| Defendant-Appellant. | ) ) | |

JUSTICE HYMAN delivered the judgment of the court.
Presiding Justice Lavin and Justice Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Ineffective assistance of counsel claims were not raised on direct appeal and are forfeited. Forfeiture notwithstanding, no prejudice resulted, and defense counsel's decision to present testimony as to *mens rea* was a matter of defense strategy.

¶ 2    Petitioner Ibrahim Kibayasi appeals from the second stage dismissal of his petition for postconviction relief. Following a bench trial, Kibayasi was found guilty of first degree murder of his infant son and sentenced to 35 years in prison. On appeal, we upheld Kibayasi's conviction and sentence. *People v. Kibayasi*, 2013 IL App (1st) 112291. Private counsel prepared his postconviction petition, which the trial court dismissed.

¶ 3    We affirm. Defense counsel's decision to present testimony as to Kibayasi's *mens rea* was a matter of defense strategy and not ineffective assistance of counsel. Moreover, Kibayasi testified at trial about his own actions and, thus, cannot show prejudice. The ineffective assistance of counsel claims regarding pretrial motions, a witness's evidence deposition, and the failure to call a mitigation witness at the sentencing hearing were not raised on direct appeal and are forfeited. Notwithstanding forfeiture, no prejudice resulted. A hearing was held on the motion to quash arrest at which Kibayasi testified; defense counsel fully participated in the evidence deposition; and missing witness's testimony at the sentencing hearing would not have outweighed the aggravating factors, especially where the trial court had the presentence investigation report.

¶ 4                                 Background

¶ 5    The facts are recounted in our opinion disposing of Kibayasi's direct appeal. *People v. Kibayasi*, 2013 IL App (1st) 112291. To summarize, on September 3, 2009, Kibayasi was at home caring for his then-five-month-old son, Dylan, while Dylan's mother, Martha Lupembe, was at work. Kibayasi became frustrated with Dylan's crying and shook him with enough force to cause unconsciousness. Kibayasi performed CPR and was driving him to the hospital when Dylan began crying, which Kibayasi took as a good sign. Kibayasi instead picked up Lupembe from work. In the car on the way home, Lupembe noticed that Dylan was having a seizure and called 911. The dispatcher instructed them to wait for an ambulance. At the hospital, doctors diagnosed extensive retinal hemorrhages in the back of Dylan's eyes and subdural hematomas on both sides of his brain. Dylan's treating physician testified that nonaccidental trauma, otherwise known as shaken baby syndrome, likely caused the injuries. Dylan's condition deteriorated, and days later he died.

¶ 6    At the hospital, Kibayasi did not tell Lupembe or the doctors that he shook Dylan, and Detectives Michael Landeweer and Mark Recker questioned Kibayasi. While there, the

Department of Child and Family Services informed Kibayasi that he and Lupembe were no longer allowed in Dylan's hospital room. When Lupembe and Kibayasi left the hospital, the detectives asked them to go to the police station, which they did. Kibayasi and Lupembe were interviewed separately. Kibayasi provided a videotaped statement to police and an assistant State's Attorney, admitting that after Dylan refused to eat and kept crying, Kibayasi shook him. *Id*. ¶ 5.

¶ 7       Before trial, Kibayasi's counsel filed a "Motion to Suppress Statements," alleging coercion rendered his videotaped statement involuntary, and a "Motion To Suppress Evidence Based On Improper Arrest," alleging lack of probable cause for his arrest. The court held a hearing on the motion to quash the arrest at which a detective and Kibayasi testified. After the court denied the motion, defense counsel stated that Kibayasi would likely withdraw the motion to suppress statements but needed to consult with his client. The motion was later withdrawn.

¶ 8       At a bench trial, the State introduced Kibayasi's statement into evidence without objection and presented Lupembe's videotaped deposition. Additionally, the trial court heard testimony from responding paramedics, Dylan's treating physician, the doctor who performed Dylan's autopsy, and an expert in pediatric emergency medicine**.** Kibayasi testified on his own behalf. He admitted shaking Dylan but claimed he did not know that shaking a baby could be deadly. *Id*. ¶ 33.

¶ 9       Kibayasi was found guilty of first degree murder and acquitted of aggravated battery. At the sentencing hearing, the State argued in aggravation that Kibayasi had a good life, was well-educated, and had no excuse for his actions. In mitigation, defense counsel argued that Kibayasi was a hard worker who accepted responsibility.

¶ 10       The trial court reviewed the presentence investigation report, a statement by Kibayasi, and arguments. The trial court found Kibayasi had an anger management problem and noted

Kibayasi's position of trust over Dylan and the violent nature of Dylan's death. The trial court recognized that Kibayasi felt remorse. Kibayasi received a sentence of 35 years.

¶ 11        Before amending his postconviction petition, Kibayasi filed a complaint with the Illinois Attorney Registration & Disciplinary Commission against his trial counsel. Trial counsel's response stated that Kibayasi's postconviction counsel followed up with expert witnesses and obtained affidavits from them, which postconviction counsel incorporated into Kibayasi's petition.

¶ 12        In his amended postconviction petition, Kibayasi asserted three grounds for claiming counsel's ineffectiveness: (i) failure to litigate a motion to suppress his statement; (ii) failure to present evidence to refute the State's theory as to the cause of death; and (iii) failure to investigate and call witnesses to testify in mitigation at the sentencing hearing. Kibayasi also claimed his right to confront witnesses was denied when the State introduced a videotaped evidence deposition for Lupembe's testimony. After a hearing, the trial court denied the postconviction petition in a detailed 23-page Order.

¶ 13                                    Analysis

¶ 14        Kibayasi makes four claims of ineffective assistance of trial counsel. He asserts he made a substantial showing in his postconviction petition that (i) trial counsel failed to present exculpatory evidence and instead conceded that he killed his son; (ii) trial counsel failed to litigate a motion to suppress his statement to police, even though detectives physically assaulted him, threatened to have him beaten by other inmates, and threatened deportation; (iii) trial counsel failed to specify why his opportunity to cross-examine Lupembe at her deposition was inadequate, and, thus, why her deposition testimony should not have been admitted at trial; and (iv) trial counsel did not seek a continuance at sentencing to enable Kibayasi's father to testify in mitigation.

¶ 15    The PostConviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) allows a petitioner to raise a claim of violation of constitutional rights in the original trial or sentencing proceedings. *People v. Ruiz*, 2020 IL App (1st) 163145, ¶ 26. The Act sets out three stages. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). To proceed to the second stage, a petitioner must put forward "the gist of a constitutional claim." *People v. Harris*, 224 Ill. 2d 115, 126 (2007). The court liberally construes the petition in the petitioner's favor and accepts as true well-pled facts not positively rebutted by the record. *People v. Sanders*, 2016 IL 118123, ¶ 31. Second stage proceedings test the petition's legal sufficiency and do not resolve evidentiary questions. *People v. Coleman*, 183 Ill. 2d 366, 385 (1998). The petitioner bears the burden of making a substantial showing of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 35. If a petitioner makes the requisite substantial showing, the third stage, an evidentiary hearing, follows. *Id.* ¶ 34.

¶ 16    To establish an ineffective assistance claim, a petitioner must show (i) counsel's performance fell below an objective standard of reasonableness, and (ii) a reasonable probability exists that, but for counsel's deficient performance, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In showing deficient performance, petitioner must "overcome the strong presumption that the challenged action or inaction of counsel was the product of sound trial strategy and not of incompetence." *People v. Clendenin*, 238 Ill. 2d 302, 317 (2010). Regarding the second prong, a petitioner must show more than a mere possibility of a different result. *People v. Evans*, 209 Ill. 2d 194, 220 (Ill. 2004). "[A] reasonable probability that the result would have been different is a probability sufficient to undermine confidence in the outcome—or put another way, that counsel's deficient performance rendered the result of the trial unreliable or fundamentally unfair." *Id.* To prevail, a petitioner must satisfy both the performance and prejudice prongs of the *Strickland* test. *Id.*

¶ 17    Finally, "any claim of substantial denial of constitutional rights not raised in the original petition is waived." 725 ILCS 5/122-3. "[A] postconviction petitioner may not wait until appeal to formulate the matters that he [or she] wishes to assert as grounds for postconviction relief." *People v. McNeal*, 194 Ill. 2d 135, 153 (2000).

¶ 18                                 *Ineffective Assistance of Counsel*

¶ 19                                      *Defense Strategy at Trial*

¶ 20    Kibayasi claims he received ineffective assistance of counsel where his trial counsel conceded the *actus reus* of the crime and did not present evidence refuting the State's theory that Dylan's death resulted from shaking. Kibayasi argues that trial counsel should have presented medical records and DCFS reports to support the theory that Lupembe caused Dylan's injuries. In his opening statement and cross-examinations, Kibayasi's trial counsel raised the question of the timing of Dylan's injuries, but Kibayasi maintains that was insufficient.

¶ 21    Trial counsel has the right to ultimately decide tactics and strategy after consulting with the client. *People v. Phillips*, 217 Ill. 2d 270, 281 (2005). This includes witnesses, whether and how to conduct cross-examination, jurors to accept or strike, trial motions, and the defense. *Id.*

¶ 22    The State points to trial counsel's response to the ARDC complaint. Explaining that multiple expert witnesses were consulted regarding Dylan's cause of death, trial counsel stated, "[p]rior to his trial, we did consider this argument [that Lupembe was responsible], and decided it was not the best defense strategy at that time."

¶ 23    The trial court found, and we agree, that the choice of defense did not constitute deficient performance under *Strickland* and constituted a reasonable defense strategy. Also, Kibayasi elected to testify at trial—his choice alone—and admitted he became frustrated with Dylan's crying and shook him until he became unconscious. For this reason, Kibayasi could not show

prejudice. Even if trial counsel had presented evidence challenging the State's theory of the cause of death, there is no reasonable probability that the result would have been different.

¶ 24                                    *Pretrial Motions*

¶ 25        Next, Kibayasi asserts trial counsel failed to litigate a motion to suppress his statement to police. The State responds that the decision to file or withdraw a motion is "presumptively trial strategy," citing *People v. Morales*, 339 Ill. App. 3d 554, 563 (2003). Further, the outcome would not have differed as Kibayasi testified he had shaken Dylan. See *People v Ayala*, 386 Ill. App. 3d 912, 919 (2008) (defendant not prejudiced by counsel's failure move to suppress confession).

¶ 26     At the hearing on the motion to quash his arrest, a detective testified to receiving a fax in which DCFS stated the injuries were consistent with shaken baby syndrome and that Lupembe and Kibayasi agreed to go to the police station. Kibayasi testified that at the station, detectives physically assaulted him, threatened to keep him from Dylan, have him beaten by inmates, and deportation. The detective disclaimed these allegations. The trial court denied the motion to suppress.

¶ 27     In his postconviction petition, Kibayasi asserted that trial counsel should not have withdrawn the motion to suppress his statement. In support of its motion to dismiss, the State argued the evidence presented on the motion to quash included Kibayasi's testimony about his alleged mistreatment at the hands of the police and the detective's testimony refuting it.

¶ 28     The trial court reasoned that the decision not to litigate the motion to suppress constituted trial strategy, which petitioner waived by not raising it on direct appeal. In trial counsel's response to the ARDC complaint, trial counsel explained the decision to withdraw: "An extensive hearing was conducted after which Judge Scotillo ruled that the arrest of Mr. Kibayasi was proper and that his videotaped confession would be admitted during trial. After listening to

the Judge's ruling, Mr. Kibayasi decided (with my approval) to withdraw the Motion to Suppress Statements. That Motion argued that Mr. Kibayasi's confession was involuntary."

¶ 29 Moreover, the trial court noted that the postconviction petition contained a single sentence alleging ineffective assistance of appellate counsel for not raising this issue on direct appeal, which, as an undeveloped allegation, was insufficient to overcome forfeiture. See *People v. Gayden*, 2020 IL 123505, ¶ 28 (quoting *People v. White*, 221 Ill. 2d 1, 21 (2006) ("With regard to the filing of a motion to suppress, the decision whether to file such a motion is 'generally a matter of trial strategy, which is entitled to great deference'"). To establish ineffective assistance based on failure to litigate a suppression motion, a defendant must demonstrate that the unargued suppression motion was meritorious and establish a reasonable probability that the trial outcome would have been different had the evidence been suppressed. *Id.*

¶ 30 We reject Kibayasi's claim. Only after the trial court ruled on the motion to quash the arrest did trial counsel withdraw the motion. This falls squarely within the trial strategy.

¶ 31 Additionally, Kibayasi's testimony at trial largely repeated what he had said in his statement to the police, so Kibayasi cannot show prejudice. Even if Kibayasi had prevailed and his statement was suppressed, we have no basis for saying the trial outcome would have been different.

¶ 32                              *Lupembe's Deposition*

¶ 33 Before trial, the State moved to admit the recording of Lupembe's evidentiary deposition conducted one-and-a-half months after Kibayasi's arrest. Kibayasi's trial counsel objected to the admission of Lupembe's deposition on the ground that there had been insufficient discovery for him to cross-examine her adequately. The court granted the State's motion and admitted the videotaped deposition, finding Lupembe unavailable because she was in Tanzania, and trial counsel had an adequate opportunity to cross-examine her at her deposition.

¶ 34    In his postconviction petition, Kibayasi framed this issue as a denial of his Sixth Amendment right to confront witnesses, alleging in one sentence that appellate counsel was ineffective for not raising the issue on direct appeal. In this appeal, Kibayasi expresses the issue as ineffective assistance of counsel. He argues trial counsel should have been more specific when objecting to the admission of Lupembe's deposition, explaining that some DCFS reports were unknown at the time of the deposition, and they impacted counsel's ability to cross-examine. The State argues that this reframing results in forfeiture.

¶ 35    The trial court dismissed this claim, finding it forfeited when he did not raise it on direct appeal and that appellate counsel's decision was reasonable.

¶ 36    This claim could have been raised on direct appeal and is forfeited. Still, Kibayasi's counsel properly objected to the deposition's admission, and, further, Kibayasi has not established prejudice. Counsel cross-examined Lupembe during the deposition; the DCFS report regarding Lupembe's involvement would not have exonerated Kibayasi or changed the outcome.

¶ 37                                    *Sentencing*

¶ 38    Finally, Kibayasi claims should have sought a continuance to enable his father to testify in mitigation. Kibayasi attached an affidavit from his father to his postconviction petition in which his father said he had wanted to testify at the sentencing hearing, but trial counsel told him an incorrect date. The trial court found Kibayasi waived his claim, and besides, the claim was meritless because counsel's decision concerned trial strategy and was non-prejudicial.

¶ 39    The State again raises forfeiture. Contrary to postconviction pleading rules, the State argues the issue was never raised in the amended petition. Regardless, Kibayasi's father's testimony would have provided no additional information beyond that contained in the presentence investigation report. See *People v. Griffin*, 178 Ill. 2d 65, 87 (1997) ("Defense counsel cannot be

faulted for failing to introduce mitigation evidence that was already contained in the [presentence investigation] report.").

¶ 40    Even so, a claim counsel should have investigated and presented additional evidence must still show prejudice. *People v. Enis*, 194 Ill. 2d 361, 413 (2000) (duplicative evidence at sentencing). Kibayasi cannot show prejudice where the evidence in aggravation sufficiently warrants the sentence.

¶ 41                              Argument on Cumulative Effect of Alleged Errors

¶ 42    Before concluding, we address Kibayasi's contention that the cumulative impact of his trial counsel's alleged errors satisfied the prejudice requirement of *Strickland*. See *People v. Vera*, 277 Ill. App. 3d 130, 141 (1st Dist. 1995) (though any one error may not have satisfied *Strickland*, cumulative impact rendered conviction unreliable). Having found Kibayasi has failed to show his counsel performed deficiently after analyzing each purported error independently, we also find no cumulative prejudice. Given the strength of the evidence against Kibayasi and that he cannot demonstrate a reasonable probability that the outcome of the trial would have been different on any the presupposed errors, we also reject cumulative prejudice. See *People v. Sims*, 2019 IL App (3d) 170417, ¶ 55 (generally, no cumulative error where individual alleged errors do not amount to reversible error).

¶ 43    Affirmed.