2021 IL App (3d) 180618

Opinion filed May 26, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the Tenth Judicial Circuit, Peoria County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0618 Circuit No. 13-CF-318 |
| MARQUIS D. COSTIC, | ) ) ) | The Honorable Paul Gilfillan |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE McDADE delivered the judgment of the court, with opinion.
Justice Daugherity concurred in the judgment and opinion.
Justice Schmidt dissented, with opinion.

_____

**OPINION**

¶ 1        The State charged petitioner, Marquis D. Costic (defendant or Costic), with one count of

first degree murder (720 ILCS 5/9-1(a)(2) (West 2012)), one count of aggravated battery (720

ILCS 5/12-3.05(e)(1) (West 2012)), and two counts of mob action (720 ILCS 5/25-1(a)(1) (West

2012)). A jury found Costic guilty of all counts. The trial court entered convictions on the first

degree murder and aggravated battery charges and sentenced him to 34 years' and 17 years'

imprisonment respectively on those charges, to be served consecutively. On direct appeal, we

affirmed Costic's convictions and sentences.

¶ 2        Costic filed a *pro se* petition for postconviction relief alleging, among other things, a

claim of actual innocence. The trial court dismissed the petition as frivolous and patently without

merit. Costic now appeals this first-stage, summary dismissal of his postconviction petition. For

the following reasons, we reverse the trial court's decision and remand the matter for further

postconviction proceedings at the second stage.

¶ 3                                BACKGROUND

¶ 4        In this appeal, Costic challenges the trial court's summary dismissal of his petition for

postconviction relief. Therefore, we incorporate by reference our prior decision, where we

described the evidence in detail. *People v. Costic*, 2017 IL App (3d) 140218-U, ¶¶ 4-23. We

repeat only those facts necessary to review the trial court's first-stage dismissal of Costic's

postconviction petition.

¶ 5        On January 7, 2014, both parties answered ready for trial. Costic's attorney—Robert

Pugh—announced that the defense would proceed without two witnesses who had been

previously subpoenaed. The defense then announced its intent to call Costic's brother, Michael

Costic (Michael), as a witness. Michael had been charged as a codefendant with the same set of

crimes, but his trial was to be held separately from Costic's trial. The court held a hearing

outside the presence of the jury on Michael's willingness to testify at trial. Trial counsel asked

Michael if he understood that he was going to be called as a witness for his brother regarding the

events of the alleged crimes. Michael responded that "on the advice of [his] counsel and pursuant

to the rights granted [to him] under the Constitution of the United States and of the State of

Illinois," he was respectfully declining to answer "any questions related to this matter." The trial

proceeded without testimony from Michael.

¶ 6        Relevant to this appeal, Christeia Bonner and Kimberly Brock testified for the State at trial. Bonner stated that, on April 7, 2013, they were driving up Butler Street toward the intersection of Warren Street. Bonner was the driver; they never made it to the intersection. Bonner saw two black males run past the car toward the intersection. One of them, the shorter one, had dreadlocks, and the other was taller and "dark-skinned." Bonner believed there were over 50 people at the intersection. At one point, she heard a gunshot and people started running. Bonner saw the two men that had run past the car "tuggling [sic] back and forth with each other." She then heard multiple gunshots. She put the car in reverse to get out of the area. She never saw the gunshots fired nor saw the weapon.

¶ 7        Brock testified that she was a passenger in the car with Bonner. She also heard the gunshots but testified that she saw something she believed to be a gun. She said that the gunshots came from one of the men who ran past the car: "the one in front had longer hair and that's where the gunshots came from." The next day, Brock reported the incident to the police. They showed her a 12-person photo lineup from which she identified Costic as the shooter. She also identified Michael as the person she saw "running with the shooter." Brock identified Costic as the shooter in court.

¶ 8        Gerald Embrey testified that the victim of the shooting was his friend Treyshawn Blakely. He saw Blakely get shot in the head and fall to the ground. Embrey was shot in the leg and ran away from the scene. He was later treated at the hospital and released. He knew both Costic and his brother Michael. He saw them that day heading toward the crowd at the intersection of Butler Street and Warren Street. He passed them before the shots were fired but did not see anyone with a weapon. Embrey recalled seeing people fighting but did not see either of the Costic brothers involved in the fighting.

3

¶ 9    Jared Hanneman testified that he was Costic's cellmate for two months, during which time they spoke with each other about their cases. Hanneman was being held on several charges, which included a burglary, possession of a controlled substance, and aggravated battery. Defendant told Hanneman that on the night Blakely was killed, Costic, his brother Michael, and some of their friends had left a party and had run into a group of people with whom they "ha[d] some animosity." A fight broke out between the two groups. Both Costic and Michael were a part of the fight. Costic told Hanneman that Michael "had grabbed a gun and started taking shots into the group of people" and then they left the scene and went to hide out. Costic indicated that Michael shot Blakely. Hanneman did not request to speak with a detective about the information from Costic until a week before Costic's trial. Hanneman testified he had learned all the information in "bits and pieces" over the course of two months and that he believed testifying was the right thing to do. Hanneman did not expect any negative repercussions or beneficial treatment regarding his pending charges because of his decision to testify. On cross-examination, the defense asked Hanneman if he was a drug addict, and Hanneman said he used drugs recreationally. The judge sustained the prosecutor's objection to whether Hanneman was a father.

¶ 10    Costic did not testify in his own defense. Instead, the defense called Twila Williams, who was familiar with the Costic family and knew the brothers. She was at her mother's house on the 1600 block of Butler Street on the day of the incident. She testified to hearing the gunshots and identified the shooter as Costic's brother—Michael. She said that Michael was with "another guy" at whom she did not a get a good look. Williams did not come forward with her testimony until after she was arrested on an unrelated matter and was questioned about the incident.

¶ 11    The jury found Costic guilty on all counts, and the trial court sentenced him to consecutive terms of 34 years and 17 years for the first degree murder and aggravated battery, respectively. No conviction or sentence was entered on either count of mob action. Costic filed a timely appeal challenging the sufficiency of the evidence for his two convictions, raising a claim of prosecutorial misconduct related to closing arguments, requesting a *Krankel* hearing on trial counsel's failure to call two absent subpoenaed witnesses, and claiming an abuse of discretion at sentencing against the trial court. This court affirmed his convictions and sentences.

¶ 12    On May 4, 2018, Costic filed a *pro se* postconviction petition raising four claims of constitutional deprivation, including a claim of actual innocence. In support of his claim of actual innocence, Costic attached a notarized, signed affidavit from his brother Michael. In the affidavit, Michael stated that, on April 7, 2013, he left his grandmother's house "alone" and approached a group of people, hoping to buy "marijuana." A group of men started an altercation with him, thinking he was another person. Michael stated that, after removing himself from the fight, he went to his grandmother's house to retrieve a gun and return to the scene to confront the men. He explained the event as follows:

> "I never stopped to talk to anybody. I never told anyone what I was going to do, and I never asked for help from anyone when I made it to the house. I was alone. I grabbed the gun by myself and I went back to the scene where I fired the gun alone standing by myself. When the shooting was over, I ran away alone. I never conspired with anyone about what I was going to do. I was so caught up in my emotions about being jumped, I never stopped to talk to anyone."

5

¶ 13　　　　On July 17, 2018, the trial court summarily dismissed Costic's petition. On August 8, 2018, Costic filed a *pro se* petition for rehearing. He asserted that Michael's affidavit supported a stand-alone claim of actual innocence. On September 18, 2018, the trial court issued a written order denying the petition for rehearing. The court ruled that the factual allegations and affidavit were insufficient to support the claims of postconviction relief.

¶ 14　　　　Costic now appeals the trial court's summary dismissal of his postconviction petition and its decision denying his petition for rehearing.

¶ 15　　　　　　　　　　　　　　　　ANALYSIS

¶ 16　　　　On appeal, Costic argues that the trial court erred in summarily dismissing his *pro se* petition at the first stage. He asserts that his petition was sufficient to state a gist of a constitutional claim of actual innocence based on newly discovered evidence in the form of Michael's affidavit admitting to his own guilt and to acting "alone." Costic contends that Michael's affidavit constitutes newly discovered evidence because Michael, having asserted his Fifth Amendment right against self-incrimination, was unavailable to testify at trial. For those reasons, he asks that we reverse the trial court's decision. We agree and remand his case for second-stage proceedings, including the appointment of counsel.

¶ 17　　　　The Post-Conviction Hearing Act (Act) establishes a procedure for an imprisoned criminal defendant to collaterally attack his conviction or sentence based upon a substantial violation of federal or state constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2018). In the first stage of proceedings under the Act, the trial court has 90 days to independently review the postconviction petition, taking the allegations as true, and to determine whether the petition is frivolous or patently without merit in that it fails to state the gist of a constitutional claim. *Id.* § 122-2.1(a)(2). "At the first stage, the court must accept as true and liberally construe all of the

allegations in the petition unless contradicted by the record." *People v. Walker*, 2019 IL App (3d) 170374, ¶ 13. "If the trial court finds in the first stage of proceedings that the petition is frivolous or patently without merit, it shall summarily dismiss the petition ***." *People v. Moore*, 2018 IL App (3d) 160271, ¶ 15.

¶ 18     We review *de novo* the trial court's first-stage summary dismissal of a postconviction petition. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). Because the conviction of an innocent person violates the due process clause of the Illinois Constitution, an imprisoned criminal defendant has a right in a postconviction petition to assert a claim of actual innocence based upon newly discovered evidence. *People v. Morgan*, 212 Ill. 2d 148, 154 (2004). Accordingly, from a procedural standpoint, a claim of newly discovered evidence is resolved in the same manner as any other claim brought under the Act. *People v. Ortiz*, 235 Ill. 2d 319, 333 (2009). Thus, a *de novo* standard of reviewed applies to the question "of whether, as a matter of law, a colorable claim of actual innocence has been asserted." *People v. Robinson*, 2020 IL 123849, ¶ 40.

¶ 19     "To establish a claim of actual innocence, the supporting evidence must be (1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial." *Id.* ¶ 47 (citing *People v. Edwards*, 2012 IL 111711, ¶ 32). The State concedes that Michael's affidavit is material evidence. However, the State argues that the affidavit is not evidence that is newly discovered, noncumulative, and of such a character that it would probably change the result on retrial. In particular, the State contends that the evidence cannot be newly discovered because Costic knew the facts underlying Michael's testimony and sought to have him testify at trial. But for Michael asserting his privilege against self-incrimination, the State contends, his testimony was readily available to the defense.

7

¶ 20 　　　In general, "[n]ewly discovered evidence is evidence that was discovered after trial and that the petitioner could not have discovered earlier through the exercise of due diligence." *Id.* (citing *People v. Coleman*, 2013 IL 113307, ¶ 96). However, claims of actual innocence are cognizable under the Act to prevent fundamental miscarriages of justice. *Coleman*, 2013 IL 113307, ¶ 83. We cannot imagine a greater miscarriage of justice than a situation such as that alleged here, where an innocent party is held accountable for the criminal conduct of another in which he had no active role and neither aided nor abetted in that conduct.

¶ 21 　　　Moreover, it is well settled in Illinois that a codefendant's willingness to testify to his own guilt and exonerate the petitioner can establish a claim of actual innocence. *People v. Manrique*, 351 Ill. App. 3d 277, 280-81 (2004). In *Manrique*, after two prior appeals, the defendant filed a successive postconviction petition raising a claim of actual innocence supported by an affidavit of a witness who had previously signaled his intent to assert his fifth amendment right against self-incrimination. *Id.* at 279. We held that "the defendant [had successfully] alleged actual innocence." *Id.* at 280. We reasoned that, because the would-be witness intended to assert his fifth amendment right, his "testimony was unavailable to the defendant" at the time of defendant's trial or prior appeals. *Id.* at 281.

¶ 22 　　　In this case, the State essentially asks us—and we, in turn, refuse—to ignore the legal reality that Michael was constitutionally unavailable as a witness in Costic's defense. In evaluating similar claims, the Illinois Supreme Court has noted that while the evidence was obviously known to petitioners, it "was nevertheless 'unavailable at trial.' " *Edwards*, 2012 IL 111711, ¶ 38 (quoting *People v. Harris*, 206 Ill. 2d 293, 301 (2002)). Because "[n]o amount of diligence could have forced" the would-be guilty party to waive his privilege against self-incrimination, "the evidence thus qualified as newly discovered." *Id.* Much like the petitioner in

8

*Manrique*, Costic "had no control over [Michael's] willingness to testify." *Manrique*, 351 Ill. App. 3d at 281. We concluded as much in our prior decision and see no reason to conclude otherwise in this case:

> "Based on defendant's brother invoking his fifth amendment rights and him having been charged with 'clearly related' charges, the trial court found that defendant's brother *would not be able to give any relevant testimony* and ruled that he would not be allowed to be called as a witness." (Emphasis added.) *Costic*, 2017 IL App (3d) 140218-U, ¶ 6.

¶ 23　　Faced with this principle of law, the State notes that Michael's affidavit was executed and offered two years after he was convicted and sentenced for the same crimes. The State contends that the affidavit cannot be newly discovered evidence because Michael had nothing to lose and, thus, lacked credibility. We reject this argument because it is not appropriate in reviewing a first-stage dismissal of a postconviction petition. *People v. Coleman*, 183 Ill. 2d 366, 390-91(1998). "At the [first stage], all well-pleaded allegations in the petition and supporting affidavits that are not positively rebutted by the trial record are to be taken as true. [Citations.] In deciding the legal sufficiency of a postconviction petition, the court is precluded from making factual and credibility determinations." *Robinson*, 2020 IL 123849, ¶ 45.

¶ 24　　The State next contends that the evidence is not noncumulative. It notes that Michael's affidavit is like Williams's trial testimony in that she identified Michael as the shooter and places "another person," not Costic, at the scene of the offense. We disagree with the State's contention.

¶ 25　　"Evidence is considered cumulative when it adds nothing to what was already before the jury." *Ortiz*, 235 Ill. 2d at 335 (citing *People v. Molstad*, 101 Ill. 2d 128, 135 (1984)). In *Ortiz*, the Illinois Supreme Court held an affidavit providing a first-person account of the crime and

9

denying seeing the petitioner at the scene of the crime was not cumulative evidence. *Id.* at 335-36. The court explained that in contradicting the testimony of the State's main witnesses, the affidavit offered what "[n]o other defense witness at trial offered." *Id.* at 336. In *Molstad*, the court noted that even where a "[defendant] offered alibi testimony at trial," the testimony of his codefendants "raise[d] additional questions concerning the trial court's verdict." *Molstad*, 101 Ill. 2d at 135.

¶ 26     Michael's affidavit goes to " 'an ultimate issue in the case' ": if the two brothers were at the scene, which one of them was the shooter. *Ortiz*, 235 Ill. 2d at 336 (quoting *Molstad*, 101 Ill. 2d at 135). Although Williams's testimony identifies Michael as the shooter, Michael's affidavit offers us "an admission of guilt by the culpable party" that Williams could not have offered. *Robinson*, 2020 IL 123849, ¶ 73 (citing *Ortiz*, 235 Ill. 2d at 337).

¶ 27     We also conclude that the evidence offered in Michael's affidavit "is of such a conclusive character that it would probably change the result of retrial." (Internal quotation marks omitted.) *Ortiz*, 235 Ill. 2d at 336. The only witness who identified Costic as the shooter on April 7, 2013, was Brock, who was not familiar with him and presumably only had a brief glimpse of the shooting before Bonner drove them away from the scene. In contrast, both Embrey and Williams testified that they were familiar with the Costic brothers and stated that Costic was not involved in the shooting. "The conclusive character of the new evidence is the most important element of an actual innocence claim." *Robinson*, 2020 IL 123849, ¶ 47. We note that Embrey also stated that Michael was not involved in the fight prior to the shooting, directly contradicting Michael's sequence of events. However, the mere fact that the newly discovered evidence is contradicted by some trial testimony "is insufficient to reject it." *Id.* ¶ 73.

10

¶ 28       For these reasons, we hold that Costic's petition and supporting affidavit from his brother Michael adequately alleged a claim of actual innocence, entitling him to appointment of counsel at the second stage. *Manrique*, 351 Ill. App. 3d at 281. We note that Costic raised several additional claims of deprivation of a constitutional right. However, we need not address each of those claims. "Partial summary dismissals are not permitted under the Post-Conviction Hearing Act." *People v. Cathey*, 2012 IL 111746, ¶ 34 (citing *People v. Rivera*, 198 Ill. 2d 364 (2001)). Because we have concluded that the petition established a colorable claim of actual innocence, "the entire petition must be remanded for further proceedings, regardless of the merits of any other claims." *Id.*

¶ 29                                    CONCLUSION

¶ 30       The judgment of the circuit court of Peoria County is reversed and remanded for second-stage proceedings, including the appointment of counsel for Costic.

¶ 31       Reversed and remanded.

¶ 32       JUSTICE SCHMIDT, dissenting:

¶ 33       I agree with the majority that, in light of *Edwards*, 2012 IL 111711, Michael's affidavit constitutes newly discovered evidence and further that it is material and noncumulative. Nonetheless, the finding that the affidavit presented by Michael is of such a conclusive nature that there is a probability it would change the outcome of a retrial is error. Accordingly, I respectfully dissent.

¶ 34       As correctly articulated above, in order to succeed on a claim of actual innocence, defendant must present newly discovered material and noncumulative evidence of such a conclusive nature that it would probably change the result on retrial. *Supra* ¶ 19. "The conclusive character of the new evidence is the most important element of an actual innocence claim."

11

*Robinson*, 2020 IL 123849, ¶ 47 (citing *People v. Washington*, 171 Ill. 2d 475, 489 (1996)). "Ultimately, the question is whether the evidence supporting the postconviction petition places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt. *Id.* ¶ 48.

¶ 35    Initially, I take issue with the majority's framing of the trial evidence. My colleagues subscribe to the belief that "both Embrey and Williams testified that they were familiar with the Costic brothers and stated that Costic was not involved in the shooting." *Supra* ¶ 27.

¶ 36    Williams testified that while standing on her mother's porch, she saw Michael fire a gun into the crowd while another man stood next to him. When asked if the other man was in the courtroom, she said no but then qualified that answer by saying, "I didn't quite get a good look at him." Embrey testified that he was running toward the crowd when he saw defendant and Michael together heading in the same direction. He passed them and, shortly after arriving at the melee, gunfire ensued. Elusive is the unequivocal statement that defendant was not involved in the shooting. In fact, Embrey stated he did not see the shooter, while Williams "did not get a good look at" the individual next to the shooter.

¶ 37    The majority then takes issue with Brock's testimony stating she was not "familiar" with the defendant "and presumably only had a brief glimpse of the shooting." *Supra* ¶ 27. Putting aside the majority's presumptions, Brock was "familiar" enough to identify defendant and his brother out of a 12-person photo lineup and stated the two were together before spraying gunfire into the crowd.

¶ 38    Contrary to the assertion that the affidavit of Michael is only refuted "by some trial testimony" (*supra* ¶ 27), the trial testimony resoundingly rebuts the affidavit. Michael states that he acted alone and that he was standing by himself when firing the gun. Every witness that

testified and saw the origin of the gunshots stated there were two individuals standing together. Michael states he never saw defendant. Testimony from Embrey and Brock put the two together. Then there is the testimony of Jared Hanneman recounting defendant's confession to participating in the melee and standing with Michael when Michael began shooting into the crowd.

¶ 39 Further, while addressed by the majority in the noncumulative context, the averment that the affidavit goes " to an ultimate issue in the case: if the two brothers were at the scene, which one of them was the shooter" is erroneous. (Internal quotation marks omitted.) *Supra* ¶ 26. The jury in this case returned a special interrogatory stating the prosecution failed to prove defendant was armed with a firearm. Based on the way the State pursued these charges, it is immaterial whether it was defendant or Michael that unleashed gunfire into the crowd.

¶ 40 The first degree felony murder charge relied on mob action as the predicate felony. *Costic*, 2017 IL App (3d) 140218-U, ¶ 46. On direct appeal, defendant challenged the sufficiency of the evidence regarding the aggravated battery charge. A unanimous panel of this court found:

> "Under an accountability theory, a common design may have been inferred
> from the facts of this case, where defendant participated in the street fight with
> his brother, arrived with his brother, remained with his brother during the
> shootings, fled from the scene with his brother, hid out with his brother, and
> failed to report the shootings." *Id.* ¶ 57.

Thus, "[t]he evidence was sufficient to support defendant's conviction of aggravated battery with a firearm under a theory of accountability." *Id.* ¶ 59. An admission of guilt by the principal does not change this analysis.

¶ 41 Michael's affidavit does not place the trial evidence in a different light. Nor does it undermine confidence in the judgment of guilt. "This evidence is not 'of such conclusive character that it would probably change the result on retrial.' " *Edwards*, 2012 IL 111711, ¶ 40 (quoting *Morgan*, 212 Ill. 2d at 154).

¶ 42 Although not addressed above, defendant's remaining postconviction claims are without merit. We should affirm the circuit court.

**No. 3-18-0618**

| | |
|---|---|
| **Cite as:** | *People v. Costic*, 2021 IL App (3d) 180618 |
| **Decision Under Review:** | Appeal from the Circuit Court of Peoria County, No. 13-CF-318; the Hon. Paul Gilfillan, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Karalis, and Mark D. Fisher, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | Jodi Hoos, State's Attorney, of Peoria (Patrick Delfino, Thomas D. Arado, and Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |