2024 IL App (2d) 210753-U
No. 2-21-0753
Order filed January 26, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Winnebago County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 94-CF-1051 |
| | ) | |
| ANTRONE JEROME TURNER, | ) | Honorable |
| | ) | Joseph G. McGraw, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE MULLEN delivered the judgment of the court.
Presiding Justice McLaren and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Following the supreme court's supervisory order vacating our original opinion and directing us to reconsider this case in light of *People v. Addison*, we again hold that postconviction counsel did not provide unreasonable assistance in abandoning defendant's *pro se* claim that his sentence violated the proportionate-penalties clause. Although the trial court had found that the *pro se* petition stated the gist of a constitutional claim, and thus advanced the petition to the second stage, counsel could properly conclude that the proportionate-penalties claim was not viable.

¶ 2   Defendant, Antrone Jerome Turner, appeals from an order granting the State's motion to dismiss his amended successive petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) for relief from his sentence for first degree murder (720 ILCS 5/9-

1(a)(3) (West 1994)). He argues that he did not receive reasonable assistance from postconviction counsel regarding the petition. Specifically, defendant contends that postconviction counsel performed deficiently by omitting from the amended petition a claim that defendant's sentence violated our state constitution's proportionate-penalties clause (Ill. Const. 1970, art. I, § 11). Our original opinion affirmed (see *People v. Turner*, 2022 IL App (2d) 210753, ¶¶ 1, 28). However, our supreme court issued an order in the exercise of its supervisory authority instructing us to vacate our judgment and consider the effect of *People v. Addison*, 2023 IL 127119, on whether defendant received reasonable assistance from postconviction counsel. We ordered the parties to file supplemental briefs. Having considered *Addison* and the parties' briefs, we again affirm the dismissal of defendant's petition.

¶ 3                                    I. BACKGROUND

¶ 4      Following a jury trial in the circuit court of Winnebago County, defendant was found guilty of first degree murder. Defendant committed the offense on May 7, 1994, when he was 17. The trial court sentenced defendant to a 60-year prison term. On direct appeal, we affirmed defendant's conviction. *People v. Turner*, No. 2-95-1575 (1997) (unpublished order under Illinois Supreme Court Rule 23). On April 12, 1999, defendant filed, *pro se*, his first postconviction petition, which the trial court summarily dismissed (see 725 ILCS 5/122-2.1(a)(2) (West 1998)). Defendant appealed, and the trial court appointed the Office of the State Appellate Defender to represent him. Counsel later moved to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). We granted the motion and affirmed the summary dismissal of defendant's petition. *People v. Turner*, No. 2-99-0720 (2000) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 5      On July 10, 2019, defendant filed, *pro se*, a successive postconviction petition. He claimed that his 60-year sentence was a *de facto* life sentence, which, given his age at the time of the

offense, violated the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) and our state constitution's proportionate-penalties clause. Without first granting defendant leave to file the successive petition (see 725 ILCS 122-1(f) (West 2018)), the trial court docketed the petition for further proceedings (see *id.* § 122-2.1(b)) and appointed counsel to represent defendant (see *id.* § 122-4). On November 12, 2020, counsel filed an amended petition claiming that defendant's sentence was a *de facto* life sentence that violated the eighth amendment. However, counsel did not mention the proportionate-penalties clause. Counsel also filed a certificate of compliance with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). The State successfully moved to dismiss the amended petition. We originally affirmed the dismissal, but the supreme court issued a supervisory order directing us to vacate our judgment and reconsider in light of *Addison*, 2023 IL 127119.

¶ 6                                    II. ANALYSIS

¶ 7      At the outset, we summarize the relevant principles governing proceedings under the Act. Our supreme court has stated as follows:

> "The Act [citation] provides a remedy for incarcerated defendants who have suffered a substantial violation of their constitutional rights at trial. Under the Act, a postconviction proceeding contains three stages. At the first stage, the circuit court must independently review the postconviction petition, without input from the State, and determine whether it is 'frivolous or is patently without merit.' [Citation.] If the court makes this determination, the court must dismiss the petition in a written order. [Citation.] If the petition is not dismissed, the proceedings move to the second stage. [Citation.]
>
> At the second stage, counsel is appointed to represent the defendant, if he is indigent [citation], and the State is permitted to file responsive pleadings [citation]. The circuit court

must determine at this stage whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. [Citation.] If no such showing is made, the petition is dismissed. If, however, the petition sets forth a substantial showing of a constitutional violation, it is advanced to the third stage, where the circuit court conducts an evidentiary hearing [citation]." *People v. Johnson*, 2018 IL 122227, ¶¶ 14-15.

¶ 8 Defendant does not dispute that the amended postconviction petition failed to make a substantial showing of a constitutional violation. Rather, he blames that failure on postconviction counsel's deficient performance and asks that we provide relief by reversing the dismissal and remanding for further, second-stage proceedings.

¶ 9 The right to counsel in postconviction proceedings is statutory, not constitutional. *People v. Suarez*, 224 Ill. 2d 37, 42 (2007). The Act entitles a defendant to reasonable assistance from counsel in a postconviction proceeding. *Id.* The Act "contemplates that the attorney appointed to represent an indigent petitioner will ascertain the basis of the petitioner's complaints, shape those complaints into appropriate legal form and present the prisoner's constitutional contentions to the court." *People v. Johnson*, 154 Ill. 2d 227, 237-38 (1993). To that end, Rule 651(c) imposes specific duties on counsel in postconviction proceedings. Rule 651(c) provides, in pertinent part:

"The record filed in [the appellate court] shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

When counsel files a proper Rule 651(c) certificate, a rebuttable presumption arises that counsel provided reasonable assistance. *People v. Landa*, 2020 IL App (1st) 170851, ¶ 46. Defendant argues that postconviction counsel's failure to properly amend his *pro se* petition rebuts the presumption of reasonableness.

¶ 10    Before addressing that argument, we note that the State contends that, regardless of the quality of postconviction counsel's performance, we may affirm the dismissal of the petition entirely because it was barred by the general prohibition against successive postconviction petitions. Section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2020)) provides:

> "Only one petition may be filed by a petitioner under this Article without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process."

To obtain leave to file a successive petition, a defendant need only make "a *prima facie* showing of cause and prejudice." *People v. Bailey*, 2017 IL 121450, ¶ 24.

> "[L]eave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *People v. Smith*, 2014 IL 115946, ¶ 35.

¶ 11    The State maintains that defendant failed to establish cause and prejudice. However, we need not address that issue, because—as explained below—we conclude that defendant received from postconviction counsel the reasonable assistance required by statute. Therefore, defendant has demonstrated no grounds for reversing the dismissal of his petition.

¶ 12    Turning to the merits, defendant argues that postconviction counsel performed deficiently by abandoning a viable claim in the *pro se* petition that defendant's sentence violated our state constitution's proportionate-penalties clause. We note that, "where *** the presumption of reasonable assistance is present, 'the question of whether the *pro se* allegations had merit is crucial to determining whether counsel acted unreasonably by not filing an amended petition.' " *People v. Gallano*, 2019 IL App (1st) 160570, ¶ 30 (quoting *People v. Profit*, 2012 IL App (1st) 101307, ¶ 23). It follows that, where counsel does file an amended petition, the reasonableness of counsel's choice to omit a particular *pro se* claim from the amended petition likewise depends on the merits of that claim.

¶ 13    As we have recently observed:

> "The proportionate-penalties clause states that a court must determine all penalties based on the 'seriousness of the offense and with the objective of restoring the offender to useful citizenship.' [Citation.] To succeed on a proportionate-penalties claim, the defendant must show that his sentence 'is so disproportionate to the offense as to violate the constitution.' [Citation.] Stated differently, '[t]he proportionate penalties clause is implicated when a defendant's sentence is cruel, degrading, or so wholly disproportionate to the offense so as to shock the moral conscience of the community.' [Citation.]" *People v. Garcia*, 2022 IL App (2d) 210488, ¶ 14.

"[T]he proportionate penalties clause goes further than the eighth amendment in offering protection against oppressive penalties." *People v. Savage*, 2020 IL App (1st) 173135, ¶ 65.

¶ 14 Defendant's proportionate-penalties-clause theory is rooted in a series of cases beginning with the United States Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012), which held that the eighth amendment limits the imposition of life sentences without parole for offenses committed by those under the age of 18. The *Miller* Court reasoned:

"Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. [Citations.] And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it." *Id.* at 477-78.

The General Assembly incorporated these "*Miller* factors" into section 5-4.5-105(a) of the Unified Code of Corrections (Code) (730 ILCS 5/5-4.5-105(a) (West 2016)), which became effective on January 1, 2016. Section 5-4.5-105(a) of the Code provides that the trial court must consider these factors in mitigation when sentencing a defendant for an offense committed after the section's effective date and while the defendant was under 18. *Id.*

¶ 15    In *People v. Buffer*, 2019 IL 122327, ¶ 27, the supreme court held that *Miller* applies to any life sentence for a juvenile, whether "mandatory or discretionary, natural or *de facto*." The *Buffer* court determined that a sentence of more than 40 years is a *de facto* life sentence. *Id.* ¶ 40. In *People v. Dorsey*, 2021 IL 123010, ¶ 64, the court held that, when the statutory good-conduct scheme affords a defendant a meaningful opportunity for release in 40 years or less, the sentence is not a *de facto* life sentence for purposes of *Miller*. Here, because defendant was sentenced in 1995, before the truth-in-sentencing statute was enacted, he is eligible for day-for-day credit against his sentence. Since he has a meaningful opportunity for release in 40 years or less, his sentence is not a *de facto* life sentence.

¶ 16    Nonetheless, defendant suggests that the *Miller* factors apply to him through the proportionate-penalties clause. In support of his argument that postconviction counsel should have asserted a *Miller*-based proportionate-penalties claim in the amended petition, defendant cites *People v. Harris*, 2018 IL 121932. In *Harris*, the trial court sentenced the defendant to a mandatory aggregate 76-year prison term for a murder he committed when he was a few months over 18. On appeal, he argued that his prison sentence was a *de facto* life sentence that violated the proportionate-penalties clause. He asserted that, although he was an adult when he committed the offense, *Miller* nonetheless governed his proportionate-penalties claim because his specific circumstances showed that his mentality was more like a juvenile's than an adult's. *Id.* ¶¶ 37, 42. The *Harris* court rejected the argument because the record was not sufficiently developed as to the defendant's specific circumstances. *Id.* ¶¶ 41, 46. However, the court held open the possibility that the defendant could raise his claim in a postconviction proceeding. *Id.* ¶ 48.

¶ 17    Defendant observes that, "[s]ince *Harris* was decided, numerous appellate court opinions have held that emerging adults *** may challenge their mandatory or *de facto life* sentences under

the proportionate penalties clause if they can demonstrate that the relevant characteristics of youth were not adequately considered during their initial sentencing." (Emphasis in original.) However, cases holding that "emerging adults *** may challenge their mandatory or *de facto life* sentences under the proportionate penalties clause" are inapposite here because defendant did not receive a natural or *de facto* life sentence. (Emphasis in original.)

¶ 18    Defendant also cites *People v. Gunn*, 2020 IL App (1st) 170542, and *People v. Parker*, 2019 IL App (5th) 150192. Neither case helps defendant.

¶ 19    In *Gunn*, the trial court sentenced the defendant to 40 years' imprisonment for first degree murder committed when he was 17. *Gunn*, 2020 IL App (1st) 170542, ¶ 1. The defendant argued for the first time on appeal that his 40-year sentence shocked the moral sense of the community (1) "in light of recent changes in juvenile sentencing enacted by our state legislature" (*id.* ¶ 147) and (2) because the court did not take proper account of his rehabilitative potential (*id.* ¶ 144). The appellate court found that these arguments were forfeited and that the defendant did not establish error for purposes of the plain-error rule. *Id.* ¶¶ 145-48.

¶ 20    *Gunn* provides no support for applying a *Miller*-based proportionate-penalties analysis to a juvenile's sentence that is not a natural or *de facto* life sentence. First, as defendant recognizes, *Gunn* found that the record did not support the defendant's contention that his sentence was inconsistent with "recent [statutory] changes in juvenile sentencing." *Id.* ¶ 147. *Gunn* noted that the trial court "stated at defendant's sentencing that it was aware of recent changes in both the case law and statutory law concerning juvenile sentencing." *Id.* Moreover, the trial judge "[e]xercis[ed] the discretion given to him by these new laws" and "chose not to impose [a] firearm enhancement." *Id.* Thus, *Gunn*'s point was simply that, contrary to the defendant's factual assertion, the trial court recognized and applied those changes in the law.

¶ 21 Further, the *Gunn* court was not presented with, and did not volunteer an opinion on, the legal question of whether those changes governed the defendant's sentencing. Moreover, the statutory changes referenced by *Gunn did not* include section 5-4.5-105(a) of the Code; in a separate portion of its analysis, the court dealt with the defendant's argument that the trial court erred in not applying that section. See *id.* ¶¶ 150-54. (*Gunn* concluded that section 5-4.5-105(a) of the Code did not apply, because the defendant committed the offense before the effective date. *Id.* ¶ 154.)

¶ 22 As for defendant's argument that his sentence did not reflect his rehabilitative potential, *Gunn* construed and rejected this argument as a "garden-variety" claim of sentencing error (*People v. LaPointe*, 2018 IL App (2d) 160903, ¶ 62)—not as a constitutional argument, much less a *Miller*-based argument. For these reasons, *Gunn* provides no support for a *Miller*-based proportionate-penalties challenge to defendant's sentence here.

¶ 23 In *Parker*, the defendant, who was 16 years old when arrested for murder, was permitted to challenge his guilty plea on the grounds that the negotiated sentencing cap was an unconstitutional *de facto* life sentence, and he entered his plea to avoid a mandatory life sentence. *Parker*, 2019 IL App (5th) 150192, ¶¶ 16-18. Here, we fail to see how this case has any bearing on whether defendant's sentence, which was *not* a *de facto* life sentence, violated the proportionate-penalties clause.

¶ 24 Notably absent from defendant's opening brief is any clear explanation of how his sentence, which was *not* a *de facto* life sentence, ran afoul of the proportionate-penalties clause. Instead, defendant suggests for the first time in his reply brief "that the sentencing court did *not* consider [defendant's] youth and its attendant circumstances ('the *Miller* factors') in sentencing [defendant], and as such, the sentence was unconstitutional." (Emphasis in original.) Because

defendant cites no pertinent authority that the proportionate-penalties clause requires consideration of the *Miller* factors for the sentence he received, and he does not argue that existing case law should be extended to create such a requirement, he has forfeited the issue. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); R. 612(b)(9) (eff. July 1, 2017). Furthermore, for all of the reasons previously stated, defendant has not identified any meritorious basis for a *Miller*-based proportionate-penalties claim. As such, he has failed to establish that postconviction counsel's failure to raise such a claim in the amended petition was unreasonable or constituted error.

¶ 25    In his supplemental brief, defendant argues that *Addison* holds "that courts should not perform a prejudice inquiry when a claim of unreasonable assistance is alleged." Defendant's reading of *Addison* is overly broad. In *Addison*, our supreme court considered (1) whether the defendant's postconviction counsel provided unreasonable assistance where he included the defendant's claims in an amended petition but failed to frame them as claims of ineffective assistance of appellate counsel in order to overcome forfeiture of the claims and (2) whether the defendant was entitled to a remand without showing prejudice from counsel's failure. *Addison*, 2023 IL 127119, ¶ 1.

¶ 26    With respect to the first issue, the State in *Addison* argued that the defendant's *pro se* claims were frivolous, so postconviction counsel was not required to include them in the amended petition. *Id.* ¶ 25. The State cited *People v. Greer*, 212 Ill. 2d 192 (2004), "for the proposition that the requirement that postconviction counsel make any necessary amendment to the *pro se* petition does not mean that counsel is required to advance frivolous or spurious claims." *Addison*, 2023 IL 127119, ¶ 26. The *Addison* court recognized that "*Greer* explained that, '[i]f amendments to a *pro se* postconviction petition would only further a frivolous or patently nonmeritorious claim, they are not "necessary" within the meaning of the rule.' [Citation.]" *Id.* (quoting *Greer*, 212 Ill.

2d at 205). However, the court found *Greer* inapposite because the petition in *Greer* advanced to the second stage due to the passage of time, not (as in *Addison*) because of a finding on the merits that the petition stated the gist of a constitutional claim. *Id.* Appointed postconviction counsel in *Greer* moved to withdraw at the second stage because the defendant's *pro se* claims were meritless and there were no other viable claims to raise. *Greer*, 212 Ill. 2d at 200. In *Addison*, by contrast, postconviction counsel did not move to withdraw. Rather, counsel's amended petition included several of the defendant's *pro se* claims, but counsel failed to preserve them from forfeiture. This was not reasonable assistance, the *Addison* court explained:

> "Postconviction counsel reviewed the petition and determined that five claims were worth pursuing. However, counsel failed to shape the claims into the proper form. We fail to see how it can be reasonable assistance of counsel for an attorney to identify claims worth pursuing but then fail to shape them into proper form." *Addison*, 2023 IL 127119, ¶ 26.

Having found that counsel did not provide reasonable assistance, the court turned to whether the defendant was entitled to a remand without showing prejudice. *Id.* ¶¶ 23, 32. The court answered that question in the affirmative. *Id.* ¶ 33.

¶ 27    We recognize that the *Addison* court's emphasis on the fact that the trial court there had advanced the petition to the second stage might suggest that a trial court's determination that a petition is neither frivolous nor patently without merit forecloses postconviction counsel from independently considering the merits of the defendant's claims when deciding whether to include them in an amended petition. We believe such a reading would be untenable, at least in cases where counsel discovers that there is no factual basis for a claim. See *People v. Kuehner*, 2015 IL 117695, ¶ 21 (recognizing that, even after the trial court's first-stage finding that the petition states the gist of a constitutional claim, postconviction counsel may ultimately conclude that, "despite its

superficial virtue," the petition is in fact frivolous or patently without merit and, thus, counsel must withdraw).

¶ 28    However, even if *Addison* is interpreted to somehow restrict postconviction counsel in assessing the merits of *pro se* claims that are advanced to the second stage, it is significant here that, although the trial court found that the petition stated the gist of a claim, the court did not specify whether it did so under the eighth amendment, the proportionate-penalties clause, or both. The Act does not permit partial summary dismissals. *People v. Costic*, 2021 IL App (3d) 180618, ¶ 28. Thus, the trial court's finding here did not foreclose postconviction counsel from deciding to advance defendant's sentencing challenge under the eighth amendment alone.

¶ 29    Defendant argues that *Addison* undermines *Gallano*'s holding that, where reasonable assistance is presumed, the question of whether the failure to file an amended petition was unreasonable depends on the merits of the *pro se* claims. The *Addison* court noted that the State relied on *Gallano* for the proposition that, "in cases in which a Rule 651(c) certificate has been filed, a postconviction petitioner may not obtain a remand without demonstrating prejudice." *Addison*, 2023 IL 127119, ¶ 35. The court acknowledged that *Gallano* indeed held that the rule foreclosing consideration of a petition's merits "applies only when counsel fails to file a Rule 651(c) certificate." *Id.* However, the court adhered instead to case law holding that the automatic remand rule applies also when, despite filing a Rule 651(c) certificate, postconviction counsel fails to perform one of the three specific duties set forth in Rule 651(c). *Id.* (citing *People v. Landa*, 2020 IL App (1st) 170851, ¶ 58; *Suarez*, 224 Ill. 2d at 51-52). The court affirmed that "harmless error analysis does not apply where compliance with Rule 651(c) is not shown and *** such compliance must be shown regardless of whether the claims made in the petition are viable." *Id.*

¶ 30    However, the automatic remand rule does not apply here, because it presupposes that the postconviction petitioner has rebutted the presumption of compliance with Rule 651(c) arising from counsel's certificate. The defendant in *Addison* rebutted the presumption by showing that postconviction counsel did not make procedural amendments that would have preserved claims the trial court found to be neither frivolous nor patently without merit. See *id.* ¶ 44. As discussed, in this case, the trial court's decision to advance defendant's successive petition to the second stage does not represent a finding that defendant's proportionate-penalties theory was potentially meritorious. Thus, unlike in *Addison*, postconviction counsel's choice to pursue only an eighth amendment claim does not demonstrate a failure to fulfill the duties set forth in Rule 651(c).

¶ 31    The *Addison* court's second reason for rejecting the State's argument against applying the automatic remand rule in that case was that postconviction counsel herself deemed the underlying claims meritorious and her error was failing to preserve them from forfeiture. *Id.* ¶ 30. That reasoning clearly does not apply here. There is no basis for concluding that postconviction counsel here believed that defendant's sentence ran afoul of the proportionate-penalties clause.

¶ 32    Because defendant did not rebut the presumption of reasonable assistance, the rule that the failure to provide reasonable assistance requires a remand regardless of prejudice does not apply.

¶ 33                                    III. CONCLUSION

¶ 34    For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

¶ 35    Affirmed.